Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB






Opinion Issued December 15, 2005

 





     











In The
Court of Appeals
For The
First District of Texas








NO. 01-05-00347-CR








MICHAEL ANDAVERDE, Appellant

V.

THE STATE OF TEXAS, Appellee








On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 999327










MEMORANDUM OPINION
          After a denial of his motion to suppress, and pursuant to a plea bargain,
appellant, Michael Andaverde, entered a plea of guilty to the felony offense of
possession of cocaine. The trial court assessed punishment at two years’ deferred-adjudication community supervision. In eight issues Andaverde argues (1) he was
illegally arrested by a security guard at the scene of the incident; (2) he was then
arrested without probable cause by the responding police officer; and (3) the trial
court erred in denying his motion to suppress the cocaine discovered by the police
officer as the fruit of an invalid arrest. The State contends Andaverde waived the
right to appeal when he pleaded guilty. We hold Andaverde did not waive his right
to appeal and affirm.
Facts
          At about one o’clock in the morning in early September 2004, Izeal Carey, a
security guard, observed Andaverde enter the apartment complex where Carey
worked, park his car, and remain in the car for several minutes. The gate which
normally protects the entrance to the complex was broken that night. Carey
approached the car and asked Andaverde who he sought. Andaverde gave Carey
the number to a vacant apartment. Andaverde reached under his seat, which
frightened Carey. Carey called the police. A couple of minutes later, Officer
Arevalo arrived, patted Andaverde down, handcuffed him, and placed him in the
back of his patrol car. Arevalo then searched under Andaverde’s seat and
discovered a small bag containing a white powdery substance, later confirmed to
be cocaine. 
Jurisdiction and Waiver
          The State contends that Andaverde waived his right to appeal as part of his
plea agreement, and therefore that this court lacks jurisdiction to hear the case. 
Andaverde signed a valid plea agreement which included the language that his
right to appeal was thereby waived. The trial judge signed a judgment, stamped
“Appeal waived. No permission to appeal granted.” The judgment also contained 
a handwritten note in the space next to “Notice of Appeal:” “Motion to Suppress.” 
The same day the trial judge signed a certification of Andaverde’s right to appeal. 
The trial judge’s order granting permission to appeal rebuts the presumption that
appellant waived the right to appeal. See Willis v. State, 121 S.W.3d 400, 403
(Tex. Crim. App. 2003); Galliford v. State, 101 S.W.3d 600, 603 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d). Because this case is an appeal from
the trial court’s ruling on the motion to suppress, Andaverde has a right to appeal
under the Texas Rules of Appellate Procedure. See Tex. R. App. P. § 25.2
(a)(2)(A) (a defendant can appeal “those matters that were raised by written motion
filed and ruled on before trial”). The notation on the judgment concerning the
notice of appeal indicates the trial court contemplated Andaverde’s right to appeal
its ruling on the pre-trial motion. Accordingly, Andaverde’s right to appeal is not
waived and this court has jurisdiction. 
Motion to Suppress
Standard of Review
We typically review a trial court’s ruling on a motion to suppress under an
abuse of discretion standard. Dyar v. State, 125 S.W.3d 460, 462 (Tex. Crim App.
2003). We perform a de novo review, however, in cases that present a question of
law based on undisputed facts. Id. In a motion to suppress hearing, the trial court
is the sole trier of fact and judge of the credibility of the witnesses and the weight
to be given to their testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000); Foster v. State, 101 S.W.3d 490, 495 (Tex. App.—Houston [1st Dist.] 2002,
no pet.) Accordingly, the trial court may believe or disbelieve all or any part of a
witness’s testimony, even if that testimony is not controverted. Id. If, as here, the
trial court files no findings of fact, we view the evidence in a light most favorable
to the ruling and sustain the decision if it is correct on any applicable theory of the
law. Id.
The Validity of the Initial Detention
          In his third, fourth, and fifth issues, Andaverde contends his initial detention
by Carey was an improper arrest by a private citizen, and therefore the seized drugs
are inadmissible as the fruits of an unreasonable seizure. Carey testified that the
apartment complex where the incident occurred is a gated community, but that on
the night in question the gate was broken, so Andaverde was able to enter without
the usually required access card. After he observed Andaverde sit in his car for
about five minutes without leaving, Carey approached and asked him who he was
looking for. Andaverde responded that he was “looking for some young lady to
take out,” and told Carey she lived in an apartment that Carey knew to be vacant. 
Andaverde then reached under his seat, which frightened Carey. Carey asked
Andaverde to get out of the car, which he did, and then Andaverde’s passenger,
who Carey described as a large man, began reaching under the seat, so Carey
called the police. Carey testified that he did not handcuff Andaverde or his
passenger, but he detained them until the police officer arrived two or three
minutes later.
          The Texas Code of Criminal Procedure provides that “[a] peace officer or
any other person, may, without a warrant, arrest an offender when the offense is
committed in his presence or within his view, if the offense is one classed as a
felony or as an offense against the public peace.” Tex. Code Crim. Proc. Ann.
art. 14.01(a) (Vernon 2005). An act is against the public peace when there is actual
or threatened violence. See Kunkel v. State, 46 S.W.3d 328, 330–31 (Tex.
App.—Houston [14th] 2001, pet. ref’d). “Accordingly, where means which cause
disquiet and disorder, and which threaten danger and disaster to the community,
are used, it amounts to a breach of the peace, although no actual personal violence
is employed.” Woods v. State, 213 S.W.2d 685, 687 (Tex. Crim. App. 1948).
Direct observance of the commission of the crime has been interpreted as requiring
the private citizen to observe enough of the situation to establish probable cause
that a crime is being committed. McGuire v. State, 847 S.W.2d 684, 686 (Tex.
App—Houston [1st Dist.] 1993, no pet.)
          Here, Carey’s detention of Andaverde was valid because he observed
Andaverde commit the offense of criminal trespass. A person commits criminal
trespass “if he enters or remains on or in property…of another without effective
consent…and he: (1) had notice that entry was forbidden; or (2) received notice to
depart but failed to do so.” Tex. Pen. Code Ann. § 30.05(a) (Vernon Supp. 2005). 
The presence of the gate at the entrance to the apartment complex was sufficient to
put Andaverde on notice that his entry was forbidden. See Tex. Pen. Code Ann. §
30.05(b)(2)(B) (including within the definition of notice “fencing or other
enclosure obviously designed to exclude intruders”). Andaverde presented no
evidence that he had the consent of any of the residents. The fact that he gave
Carey the number to a vacant apartment and could not name the person who he was
supposedly visiting further indicates that he did not have consent, and that he knew
his presence was forbidden. See Felder v. State, 848 S.W.2d 85, 98 (Tex. Crim.
App. 1992). Andaverde was trespassing at one in the morning, accompanied by a
large man, and he falsified his reason for being there. After failing to give a
legitimate reason for his presence he reached under his seat. Andaverde’s actions
caused Carey to believe that Andaverde was threatening him. See Turner v. State,
901 S.W.2d 767, 771 (Tex. App—Houston [14th Dist.] 1995, pet. ref’d) (finding
breach of the peace sufficient to justify arrest where security guard saw car with
four men enter apartment complex at night, two men got out of the car and security
guard asked what they were doing, the men gave the guard the number to a vacant
apartment and lied about having just gotten out of the car, guard escorted the men
back to the car with another guard, and saw appellant put a semiautomatic pistol in
the glove box). Considering the totality of the circumstances, Andaverde’s actions
constituted a breach of the peace, and Carey’s detention of him was lawful. See
Worthey v. State, 805 S.W.2d 435, 438–39 (Tex. Crim. App. 1991) (defendant’s
furtive gesture or sudden movement toward a place where a weapon might be
concealed is a factor to consider in determining whether there is reason to believe
he is armed and dangerous). We therefore overrule Andaverde’s third, fourth, and
fifth issues.
The Validity of Detention by the Police Officer
          In his sixth, seventh, and eighth issues, Andaverde contends he was arrested
by Officer Arevalo without probable cause, and therefore the cocaine should have
been suppressed as the fruit of an invalid seizure. Officer Arevalo responded to the
call from the security guard, Carey. When he arrived, Carey explained to the
officer why he had detained Andaverde. Officer Arevalo testified that he then took
custody of Andaverde for “officer safety reasons,” placed him in handcuffs, did a
high risk search, and placed him in the patrol car. Arevalo testified that a high risk
search is not a full frisk, but that it consists only of a pat down of the waistband
area and down the pants’ legs, “searching for immediate threats, either pistol, a
knife, just something that’s obvious.” Another officer then arrived and placed
Andaverde’s passenger in handcuffs and in the back of a different patrol car. 
Because Carey told Officer Arevalo he observed Andaverde reach under his seat,
and therefore thought Andaverde had a weapon, Officer Arevalo checked “just
underneath the driver’s seat,” where he discovered the cocaine. 
Whether this treatment of Andaverde constituted a detention or an arrest
determines the constitutional parameters to apply to determine its legality. Francis
v. State, 896 S.W.2d 406, 408 (Tex. App.—Houston [1st Dist.] 1995, pet dism’d,
improvidently granted, 922 S.W.2d 176 (Tex. Crim. App. 1996)) (citing Amores v.
State, 816 S.W.2d 407, 411 (Tex. Crim. App. 1991)). This Court in Francis held
that “it is more useful to examine each progressive level of intrusion to determine
if it is reasonable under the circumstances based on the information known to the
officer at the time rather than to focus on a particular segment of the transaction to
see if it fits into a particular category of police intrusion.” 896 S.W.2d at 411. 
Thus, we must first determine whether the initial seizure was a valid detention,
then whether the officer’s continued intrusion exceeded the scope of a temporary
investigative detention. 
An investigative detention occurs when a law enforcement officer confronts
an individual, who then yields to a display of authority and is temporarily detained
without a warrant. Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995);
Pennywell v. State, 127 S.W.3d 149, 153 (Tex. App.—Houston [1st Dist.] 2003, no
pet.). To justify an investigative detention, an officer must have reasonable
suspicion, based on specific articulable facts that, in light of the officer’s
experience and general knowledge, lead the officer to a reasonable conclusion that
criminal activity is underway and that the detained person is connected with the
activity. Sims v. State, 98 S.W.3d 292, 295 (Tex. App.—Houston [1st Dist.] 2003,
pet. ref’d). Reasonable suspicion may be based on information provided by an
informant or private citizen if it bears sufficient indicia of reliability. Lemons v.
State, 135 S.W. 878, 883 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A tip
from an informant who observes an event first hand can create reasonable
suspicion justifying a detention. Malkowsky v. Tex. Dept. Public Safety, 53 S.W.3d
873, 876 (Tex. App.—Houston [1st Dist.] 2001, pet denied). Furthermore,
reliability can be heightened when an informant places himself in a position to be
easily identified and held responsible for the information provided. Hawes v.
State, 125 S.W.3d 535, 538 (Tex. App.—Houston [1st Dist.] 2002, no pet.).
          Here, the police officer had reasonable suspicion to detain Andaverde. 
Officer Arevalo responded to a call by an apartment complex security guard at one
in the morning in a high crime area. He was informed that Andaverde had given
false information to Carey, and was reaching under the seat in his car, possibly
searching for a weapon. The reliability of the tip from Carey is heightened by the
fact that Carey initially detained Andaverde, and was therefore susceptible to
identification by Andaverde. The tip was also made reliable by the fact that Carey
witnessed the trespass firsthand, and witnessed Andaverde’s furtive movements
below his seat. In addition, Officer Arevalo testified that his prior experiences
with Carey led him to believe he was credible and reliable. Thus, Arevalo had
reasonable suspicion to detain Andaverde.
          The next issue under Francis is whether the officer exceeded the scope of an
investigative detention. 896 S.W.2d at 411. Police may use the degree of force
necessary to effectuate the goal of the detention, including investigation and officer
safety. Rhodes v. State, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997). The
reasonableness of the restraint must be evaluated from the perspective of a
reasonable officer at the scene. Id. at 118. Handcuffing a suspect and/or placing
him in the patrol car are consistent with maintaining officer safety during the
course of an investigative detention, and do not necessarily transform a valid
detention into an invalid arrest. See Rhodes, 945 S.W.2d at 118 (handcuffing
consistent with investigative detention where officer feared for his safety); Spight
v. State, 76 S.W.3d 761, 770 (Tex. App.—Houston [1st Dist.] 2002, no pet.)
(same); Zone v. State, 84 S.W.3d 733, 740 (Tex. App.—Houston [1st Dist.] 2002,
aff’d 118 S.W.3d 776 (Tex. Crim. App. 2003)) (handcuffing suspect and placing
him in patrol car justified during investigative detention where officer feared for
his safety); Francis, 896 S.W.2d at 412 (placing defendant in patrol car consistent
with detention). 
The amount of force used by the police officer in this case is consistent with
an investigative detention. Here, the incident occurred at night in a high crime
area. Officer Arevalo had been informed by Carey that Andaverde falsified his
reason for being in the complex, and was reaching under his seat for what Carey
thought might be a weapon. Under these circumstances, handcuffing Andaverde
and placing him in the car was reasonable to ensure the officer’s safety. Officer
Arevalo validly detained Andaverde.
The Reasonableness of the Search
          Having determined that Officer Arevalo executed a valid detention of
Andaverde, we must now determine the validity of the search of Andaverde’s car. 
In the course of an investigative detention, an officer may conduct a limited search
for weapons where it is reasonably warranted for his safety or the safety of others. 
Guevara v. State, 6 S.W.3d 759, 764 (Tex. App.—Houston [1st Dist.] 1999, pet.
ref’d). The search must be limited to those areas in which a weapon may be placed
or hidden. Michigan v. Long, 463 U.S. 1032, 1050–51, 103 S.Ct. 3469, 3481
(1983); Goodwin v. State, 799 S.W.2d 719, 727–28 (Tex. Crim. App. 1990);
Hurtado v. State, 881 S.W.2d 738, 742 (Tex. App.—Houston [1st Dist.] 1994, pet
ref’d ). Here, Officer Arevalo performed a high-risk pat down, and then searched
only the area underneath the seat in Andaverde’s car where Carey said Andaverde
was reaching during his questioning. Under the circumstances of this case, this
was a reasonable search for weapons during the course of an investigative
detention.
Conclusion
          The trial court did not err in denying Andaverde’s motion to suppress
because Carey lawfully detained him, and the officer conducted a valid weapons
search during the scope of a valid investigatory detention. We therefore affirm.
 

                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.
Do not publish. Tex. R. App. P. 47.4.